# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# NO. 3:14-CR-111-FDW-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| ) | |
| JOSE IVAN HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Order" by Chief Judge Whitney (Document No. 36), filed August 20, 2015, and several associated pleadings (Document Nos. 34, 37, 44). This matter was remanded to the undersigned for the consideration of a precise question. The Court has carefully considered the pleadings, the record, applicable authority, and the arguments of counsel at a hearing conducted on December 9, 2015, and the undersigned will modify its previous "Memorandum and Recommendation" (Document No. 31) as noted herein.

## BACKGROUND[1]

In a "Bill of Indictment" (Document No. 3) filed June 18, 2014, Defendant Jose Ivan Hernandez ("Defendant") was charged in the Western District of North Carolina with Count One, distribution of and possession with intent to distribute heroin – conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846; and Count Two, money laundering – conspiracy, in violation of Title 18, United States Code, Section 1956(h). Following indictment,

---

[1] The Court will dispense with another lengthy summary of the facts, which is available in the Court's previously filed "Memorandum and Recommendation" (Document No. 31). Sufficient factual and procedural background is set forth to provide a context for the Court's decision.

the Defendant was detained on July 2, 2014, during a routine traffic stop in Riverside County, California, at which time two wireless phones belonging to the Defendant were seized from the car. (Document No. 21, p.1; Document No. 27, Ex.1, p.1). Defendant was transported to the Riverside County Sheriff's Department station in Perris, California, where he was questioned by DEA Agents. (Document No. 21, p.1; Document No. 23, p.3; Document No. 27, Ex.1, p.4; Document No. 27 at 32:30-33:40). Defendant was read standard <u>Miranda</u> warnings from a Spanish language DEA-13a card[2] and asked if he understood his rights, to which Defendant replied that he understood his rights and wanted his lawyer. (Document No. 21, p.2; Document No. 27, Ex.3). Agents persisted in interrogating the Defendant, encouraging the Defendant to cooperate and warning the Defendant that his "credibility with his criminal organization would be less effective" the longer he remained in custody. (Document No. 21, p.2; Document No. 23, p.2). Defendant made admissions. (Document No. 23, p.2).

After a break in the questioning, agents returned to Defendant and requested consent from Defendant to search his apartment residence and two phones. (Document No. 23, p.3; Document No. 27 at 35:20-35:40). Defendant was still without the lawyer he requested. Without a lawyer present, Defendant gave his verbal consent to the agents to search his apartment residence and one of the two wireless phones.[3] (Document No. 21, p.2).

Agents transported Defendant to his apartment residence, and Defendant, while sitting in a car with the agents, signed a document purporting to grant consent. (Document No. 23, p.3; Document No. 27, Ex.5). Defendant provided the key to his apartment residence to Special Agent Contreras at that time. (Document No. 27 at 1:53:20-1:53:30). Agents and personnel from the

---

[2] Defendant speaks Spanish only. (Document No. 21, p.2).
[3] Defendant did not give agents access to a second phone, described as a phone "with a yellow protective case," because there were "inappropriate" pictures on it. (Document No. 23, p.3; Document No. 27 at 35:20-36:03).

2

San Bernardino County Sheriff's Department station conducted the search, during which they seized two ledger notebooks and shipping materials, including materials with a sender address from North Carolina. (Document No. 23, p.3; Document No. 27 at 40:15-40:30; Document No. 21, p.3). About four hours total passed between when the Defendant's car was initially stopped on the road and the conclusion of the apartment residence search. (Document No. 27 at 41:10-41:30).

On February 23, 2015, Defendant filed a "Motion to Su[p]press with Memorandum Incorporated [Hearing Requested]" (Document No. 21) alleging violations of Defendant's constitutional rights and moving to suppress all statements made by the Defendant during custodial interrogation on July 2, all the consents to search, and all fruits of the search of the Defendant's residence as tainted by those violations. The Government filed its "Response to Defendant's Motion to Suppress Evidence" (Document No. 23) on March 4, 2015, arguing that the Defendant's consent to search was neither involuntary nor tainted by an alleged Miranda violation, which it essentially conceded. Defendant filed a "Supplement to Motion to Suppress and Reply to Government's Memorandum in Opposition [Hearing Requested]" (Document No. 24) on March 6, 2015 reaffirming its stance that the consent to search was involuntary, and expanding the physical fruits of the search for proposed suppression to include the Defendant's wireless phone. The undersigned conducted a hearing regarding this matter on April 8, 2015 (Document No. 27).[4]

On July 28, 2015, this Court filed its "Memorandum and Recommendation" ("M & R", Document No. 31). Based on the facts established by the foregoing briefs and the evidence presented at the hearing, the Court concluded that (1) the Defendant's Miranda rights were

---

[4] Document No. 27 citations used herein refer to the audio testimony from or exhibits used during the April 8, 2015 hearing.

violated; (2) the Defendant's consent was not voluntary; and (3) because the consent was not voluntary, the fruits of the consent-based searches should be suppressed.[5]

In the interim, unbeknownst to the undersigned, between the April 18, 2015 hearing and the filing of the Court's M & R, the Government applied for and was granted a "Search and Seizure Warrant" (Document 34-1, granted April 14, 2015). This search warrant was for the wireless phone, which was included in the Defendant's "Motion to Suppress" (Document 21) and for which the Defendant had allegedly given consent to search. To be clear, it is the phone addressed by the Court's previous M&R.

On August 14, 2015, the Government filed its "Objection to July 28, 2015 Memorandum and Recommendations" (Document No. 34), arguing that the Defendant's consent was voluntary and not an acquiescence to lawful authority. In addition, the Government argued that even if the consent was voluntary, the Court should modify the recommendation to allow evidence obtained from a subsequent search of the Defendant's wireless phone conducted pursuant to the warrant issued on April 14, 2015, under the "independent source" doctrine.

Upon review of the Objection, on August 20, 2015, Chief United States District Judge Frank Whitney, presiding judge in the case, remanded the matter to the undersigned to determine "whether the subsequent search of the cell phone pursuant to a valid warrant trumps the finding of involuntary consent and requires modification of the suppression order." In other words, Chief

---

[5] The "Memorandum and Recommendation" references specifically the illegal search of the Defendant's apartment residence. However, the M & R notes the overarching Miranda violation while Defendant was detained at the police station as critical to the finding that the Defendant's consent was not voluntary. The Defendant consented to search of the subject telephone while detained at the police station. Further, the M & R granted the Defendant's "Motion to Suppress . . . " which through its "Supplement to Motion to Suppress and Reply . . . " moves to suppress fruits of the search of the apartment residence and of the telephone.

Judge Whitney squarely put before the parties and the undersigned the question of whether the independent source doctrine applies to these facts and renders the search of the phone legal.

The Defendant subsequently filed its "Partial Response to Government's Objection to July 28, 2015 Memorandum and Recommendation" (Document No. 37), filed August 24, 2015, in which he contended that the independent source doctrine is inapplicable. The Government filed its "Reply in Support of Objection to July 28, 2015 Memorandum and Recommendation" (Document No. 39) on August 28, 2015. Finally, on September 8, 2015, Defendant replied with his "Response to Government's Reply [Doc 39] In Support of its Objection to July 28, 2015 Memorandum and Recommendation" (Document 41). The Court conducted a hearing on this matter on December 9, 2015.

## STANDARD OF REVIEW

The exclusionary rule, designed "to compel respect for the [Fourth Amendment] constitutional guaranty in the only effectively available way—by removing the incentive to disregard it," generally renders inadmissible evidence recovered during an unlawful search. Mapp v. Ohio, 367 U.S. 643, 656 (1961). Since its inception, the exclusionary rule has reflected a balance of the social cost of excluding evidence and the individual interest in freedom from unlawful searches. U.S. v. Leon, 468 U.S. 897, 906 (1984). As a result, a number of exceptions to the general exclusionary rule exist. Among them, the independent source doctrine "rescues from exclusion" unlawfully obtained evidence later discovered through a "genuinely independent" source, usually a warrant. U.S. v. Hill, 776 F.3d 243, 250 (4th Cir. 2015); Murray v. U.S., 487 U.S. 533, 542 (1988).

"To find a subsequent search pursuant to a warrant 'genuinely independent' of the unlawful search, the unlawful search must not have affected (1) the officer's 'decision to seek the warrant'

or (2) the magistrate judge's 'decision to issue [it].'" U.S. v. Hill, 776 F.3d 243, 251 (4th Cir. 2015) (quoting Murray, 487 U.S. at 542). To satisfy the first prong, the officer's decision to secure a warrant must not have been prompted by observations made during the unlawful entry; and the circumstances must suggest that the officer would have sought a warrant had the illegal search not occurred. Murray, 487 U.S. at 534; Hill, 776 F.3d at 253. To satisfy the second prong, information obtained during the illegal search must not have been "presented to the [m]agistrate *and* affected his decision to issue the warrant." Murray, 487 U.S. at 542 (emphasis added).

## DISCUSSION

The question before the Court, as outlined by Judge Whitney's remand order, is "whether the subsequent search of the cell phone pursuant to a valid warrant trumps the finding of involuntary consent and requires modification of the suppression order." (Document No. 36, p.1). In other words, the issue is whether the independent source doctrine permits the search of the cell phone conducted pursuant to a valid warrant, but subsequent in time to an illegal search based on consent. On these facts, the Court concludes that the proper answer is yes.

The independent source doctrine operates to allow evidence obtained in violation of a defendant's constitutional rights to escape exclusion when it is obtained through a separate and proper source. Murray, 487 U.S. at 538-39. This doctrine applies to evidence observed during a warrantless search that is later obtained pursuant to a valid warrant. Id.; U.S. v. Bullard, 645 F.3d 237 (4th Cir. 2011); Walton, 56 F.3d at 551; Hill, 776 F.3d at 243. "In the classic independent source situation, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source." Murray, 487 U.S. at 538-39 (quoting United States v. Silvestri, 787 F.2d 736, 739 (1986). Thus, illegally obtained evidence later obtained through a valid warrant

6

> would be admissible through the independent source doctrine unless (1) "the agents' decision to seek the warrant was prompted by what they had seen during" the initial illegal search or (2) "information obtained during that [illegal search] was presented to the Magistrate and affected his decision to issue the warrant."

U.S. v. Soto, 799 F.3d 68 (1st Cir. 2015) (quoting Murray, 487 U.S. at 542).

To satisfy the first prong, the agent's decision to secure a warrant must not have been prompted by observations made during the unlawful entry. Murray, 487 U.S. at 534. Whether the agent's decision to seek the warrant was affected by the illegal search is not solely a subjective test. See Murray, 487 U.S at 540 n.2 ("To say that a district court must be satisfied that a warrant would have been sought without the illegal entry is not to give dispositive effect to police officers' assurances on the point."). Rather, the Court may look to objective evidence that suggests that a warrant application was not prompted by observations made during an illegal search. Id. For example, that the subject of the search has also been the subject of an ongoing investigation and surveillance is evidence that the agent would have sought a warrant had the illegal search not occurred. See Murray, 487 U.S. at 542; Walton, 56 F.3d at 551.

Similarly, where the issue has arisen, neither the agent's subjective motivation to seek a warrant subsequent to an unlawful search, nor the good-faith character of the initial unlawful search, has been found relevant to the inquiry. See U.S. v. Johnson, 994 F.2d 994, 987 (2d Cir. 1993) (district court's reservation about the legality of the agent's review of audio tapes as incident to arrest prompted the Government's warrant application; "Whether the agents made their mistake in good faith is not relevant to this inquiry.") Neither has an extended delay in applying for a warrant prevented application of the independent source doctrine. See U.S. v. Mulder, 889 F.2d 239, 241-42 (9th Cir. 1989) (two-year delay in obtaining a warrant did not inhibit agents' reliance on the independent source doctrine where the Government obtained the property lawfully and the

7

time lapse was the result of judicial processes rather than dilatory tactics on the part of the Government). Rather, an underlying current running through the independent source doctrine is that:

> the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position that they would have been in if no police error or misconduct had occurred . . . .

Nix v. Williams, 467 U.S. 431, 443 (1984). Thus, the question of why or when the agents sought a warrant becomes largely irrelevant: the only external event or motivating factor that invalidates an agent's decision to seek a warrant is the illegal search itself and the observations made therein. See Murray, 487 U.S. at 542; see also Nix, 467 U.S. at 443; Johnson, 994 F.2d at 987; Hill, 776 F.3d at 253.

The Government argues that the record shows that the agents' decision to seek a warrant was not prompted by the initial review of the wireless phone because they promptly applied for a warrant for the phone for which Defendant did not offer consent. (Document No. 34, p.10). Defendant contends conversely that agents would not have sought a warrant but for the initial search because they were motivated solely by the pending motion to suppress to attempt to "manipulate the independent source doctrine" to preserve the contents of the phone for trial. (Document No. 37, p.2). Further, Defendant suggests that the eight-month delay as well as the footnote referring to the warrant's potential role as a vehicle for the independent source doctrine, betray the Government's intent, and render the independent source doctrine inapplicable. (Document No. 37, p.2).

There is ample evidence here that agents would have sought a search warrant for the wireless phone in question absent the search performed in reliance on Hernandez's consent.

Hernandez had been under investigation for roughly eighteen months, beginning in December 2012. Through telephone calls and text messages with and to a confidential source (recorded with the permission of the confidential source), Hernandez allegedly coordinated a shipment of some 800 grams of heroin. Thus, it is objectively reasonable for investigators to conclude that Hernandez's telephone would contain evidence of those recorded telephone calls and text messages at least, and that they would have an interest in searching his wireless phones. The agents' behavior was consistent with this conclusion: Hernandez refused consent to search a second telephone that was seized on arrest on July 2, 2014, and agents applied for a warrant to search that telephone on August 28, 2014.

That the agents only applied for a warrant when it appeared that the consent on which they had relied to conduct the initial search might be invalidated does not obscure the objective circumstances noted above that suggest that agents would have otherwise sought a warrant for the subject telephone. Nor does the eight months during which the agents relied on consent constitute a time lapse that vitiates the Government's ability to now rely on an independent warrant. In fact, when considered in connection with the prompt warrant application for Hernandez's other phone, the circumstances strongly suggest that the Government would not have obtained a warrant for the telephone in the absence of the illegal search but for its mistaken reliance on consent. Neither does the character of the agents' reliance on that consent—whether good-faith or not—inform the application of the independent source doctrine. Thus, the circumstances suggest that the Government would have sought a warrant had the illegal search not occurred. First, the investigation into Hernandez was lengthy and ongoing. Second, that investigation included recording of his phone calls and text messages. Third, the government promptly applied for a warrant for Hernandez's other seized phone. Finally, the delay in applying for a warrant was the

9

result of reliance on consent and not dilatory tactics on the part of the government. Therefore, the first prong of the Murray analysis is satisfied.

To satisfy the second prong, *information obtained during the illegal* search must not have been "presented to the [m]agistrate *and* affected his decision to issue the warrant." Murray, 487 U.S. at 542 (emphasis added). Thus, that an affidavit makes mention of the prior illegal search does not automatically invalidate the subsequent warrant under the independent source doctrine. Rather, information relating to the prior illegal search will invalidate the resulting warrant only when that information affected the magistrate judge's decision to issue the warrant. Such information has not affected the magistrate judge's decision to issue the warrant if, setting to one side illegally-obtained information, the "untainted portion of the affidavit set forth probable cause." U.S. v. Walton, 56 F.3d 551, 554 (4th Cir. 1995) (citing Franks v. Delaware, 438 U.S. 154, 172 (1978)).

The Government argues that the magistrate judge's decision to issue the warrant was not affected by the initial search of the wireless phone because the affidavits in support of the warrant for both wireless phones—the one for which Defendant did not give consent to search and the one for which he did give consent to search—are "substantively identical." (Document No. 34, p.10). The Government further argues that the only distinguishing feature, a footnote referencing the pending motion to suppress, was necessary to dispel any notion of impropriety for failing to alert the reviewing judge of the pending motion. (Document No. 39, p.1-2). Thus, the Government argues, because the inclusion of the footnote was not improper and the "untainted" portion of the affidavit supports a finding of probable cause, the magistrate judge's decision was not affected by the initial search. (Document No, 39, p.2-3).

Conversely, Defendant contends that the footnote is fatal to the analysis of the second <u>Murray</u> prong. (Document No. 37, p.2). The Defendant argues that any mention of a pending motion to suppress necessarily alerts the reviewing magistrate judge to the existence of valuable evidence, which inevitably affects a magistrate judge's decision irrespective of any deliberate impropriety. Moreover, Defendant argues that the affidavit lists the agent's qualifications and assumptions about the connection between drug dealers and wireless phones, but does not adequately support probable cause.

Though <u>Murray</u> and its progeny expressly forbid a magistrate judge's consideration of any "observations made" or "information" discovered through the initial search, there is no evidence that such information affected the magistrate judge's decision to issue a warrant here. <u>Murray</u>, 487 U.S. at 534. First, it is doubtful that the footnote to the Government's affidavit, which reads: "[e]vidence from the SUBJECT TELEPHONE is a subject of a pending Motion to Suppress . . . in <u>United States v. Hernandez</u> . . . ," (Document No. 34-1, p.9 n.2), is even the type of information contemplated in <u>Murray</u>. 487 U.S. at 534. The footnote contains no "observations," and no specific "information" from the initial search itself that could affect the magistrate judge's decision.

Second, even if reference to the motion to suppress alone was improper, applying a "<u>Franks</u> Analysis," the undersigned cannot conclude that the magistrate judge's decision was affected by the inclusion of the footnote. The reference does not necessarily even indicate that the phone in question has already been searched. Moreover, the substance of the August 28, 2014, and the April 14, 2015, affidavits is nearly identical.

Finally, the "untainted" portion of the latter affidavit provides ample support for a probable cause finding. In brief, the affidavit describes a nineteen-month investigation into a drug

trafficking organization of which Hernandez was identified as a leader. Hernandez was indicted in June 2014, around the same time that investigators began to monitor and record telephone calls and text messages between Hernandez and a cooperating confidential source. These calls and messages directed agents to two USPS packages, which contained roughly 800 grams of heroin and 888 grams of methamphetamine respectively. Hernandez's fingerprints were found on the latter package. Thus, the affidavit presented facts such that any reasonable magistrate judge would have found sufficient probable cause to issue a warrant.

In sum, based on the facts of this case, it appears to the undersigned that both prongs of the independent source doctrine have been met. Thus, the Court will recommend that its earlier M & R be modified to exclude the cell phone in question, which the Court now finds was the subject of a subsequent valid search pursuant to a warrant.

## CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Court's previous "Memorandum and Recommendation" (Document No. 31) be **MODIFIED**.

**IT IS FURTHER RECOMMENDED** that the cell phone in question, for which Defendant gave a now-disputed consent to search, is excluded from the Court's previous Memorandum & Recommendation (Document No. 31) based on the independent source doctrine. The search of that cell phone was a lawful search pursuant to a valid warrant.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of

the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**SO RECOMMENDED.**

Signed: December 11, 2015

David C. Keesler
United States Magistrate Judge